FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 0 3 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
FRANCISCO JAVIER RAMOS PORTOCARRERO,

                Plaintiff,

            -against-

CAMERON LINDSAY and LOUIS WILLIAMS,

                Defendants.
-------------------------------------------------------------- x

**MEMORANDUM AND ORDER**

08-CV-3618 (SLT) (LB)

**TOWNES, United States District Judge:**[1]

In August 2008, plaintiff Francisco Javier Ramos Portocarrero, a former inmate at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), commenced this *pro se* civil rights action against his former unit counselor, Louis Williams, and the MDC's former warden, Cameron Lindsay, alleging that Williams retaliated against him for filing a grievance and that Lindsay failed to properly supervise Williams. Defendants Williams and Lindsay now move for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. Pro. 56. For the reasons set forth below, defendants' motion, which was previously converted into a motion for summary judgment, is granted.

**BACKGROUND**

Since this Court must "draw every reasonable inference in favor of the plaintiff as the nonmoving party," *Ferguson v. Bizzario*, No. 09-Civ-8106 (PKC), 2010 WL 4227298, at *1 (S.D.N.Y. Oct. 19, 2010) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), the

---

[1] The Court gratefully acknowledges the assistance of Daniel C. Isaacs in the preparation of this Memorandum and Order.

following facts are drawn from plaintiff's sworn submissions and the exhibits attached thereto.[2] With respect to the federal inmate grievance procedure, and the grievances that plaintiff actually filed, the facts are largely uncontroverted.

On July 20, 2008, while an inmate at the MDC, plaintiff asked Williams, his unit counselor, to weigh, seal, and affix proper postage to a box of legal papers that plaintiff wished to have sent to his lawyer. *Plaintiff's Affidavit in Support [of] Petition ("Plaintiff's Affidavit"), Attached Exhibit at 14*. When plaintiff reminded Williams that he first requested help with this task one month earlier, Williams "got angry and told [plaintiff] to write [his] number on the box and drop it off in the corner of the office and [Williams would] get to it when he [got] a chance." *Id.* Plaintiff then explained to Williams that he was uncomfortable leaving his legal papers unsecured in the office, but Williams responded that he "was not going to mail out nothing for [plaintiff] and that [plaintiff] better look for another staff member to mail out the box." *Id.* Plaintiff requested that Williams call "a Lieutenant," but Williams refused, telling plaintiff that if he did so, "it would be to take [plaintiff] to the [Special Housing Unit]." *Id.*

The next day, on July 21, 2008, plaintiff commenced the grievance process by filing a "Request for Administrative Remedy." *Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Defendants' 56.1 Statement") at ¶4; Plaintiff's Complaint at 3*. In order to do so, plaintiff had to obtain the grievance form from another inmate because Williams refused to give him one. *Plaintiff's Affidavit at 1*. In that grievance, plaintiff explained that he did not first attempt informal resolution – ordinarily the first stage of the federal inmate grievance process – with Williams before filing the grievance because informal

---

[2] Though plaintiff's complaint is occasionally cited for certain background information, it is only to provide context for the facts at issue.

2

resolution would have involved Williams, and it "would be illogical for [him] to have to [attempt informal resolution] with [Williams] on the matter." *Plaintiff's Affidavit, Attached Exhibit at 4.* However, plaintiff's Request for Administrative Remedy was nonetheless rejected because plaintiff "did not submit [his] request through [an] authorized person" and "[plaintiff] did not attempt informal resolution" before filing his grievance. *Defendants' 56.1 Statement at ¶6; Plaintiff's Affidavit, Attached Exhibit at 9.*

Williams continued to refuse to mail plaintiff's legal documents. *Plaintiff, Respond [sic] ("Plaintiff's Response") at 2; Plaintiff's Complaint at 3.* On July 29, 2008, plaintiff "complained to [the then-warden, Cameron Lindsay,] about Williams' retaliation and misconduct." *Plaintiff's Complaint at 4.* Lindsay instructed plaintiff to "take that issue up with Mr. Woodall," who was Williams' supervisor. *Id.* When plaintiff spoke with Woodall, Woodall assured plaintiff that he would speak with Williams and "straighten everything out." *Id.*

Later that afternoon, Williams and Woodall called plaintiff into an office, where Williams "threatened, and insulted the plaintiff[, and] even got aggressive, and appeared like he wanted to hit plaintiff." *Plaintiff's Affidavit at 1.* According to plaintiff, Williams "threaten[ed], and yelled at [plaintiff] in front of . . . Mr. Woodall, and said that he wasn't going to do nothing for [plaintiff] ("[i]ncluding not giving me any grievance") no matter who I complained to." *Id.*

The next day, on July 30, 2008, the unit officer instructed plaintiff to "pack [his] property because [he] was leaving the unit." *Plaintiff's Complaint at 5; Plaintiff's Affidavit at 1.* Plaintiff was not given any reason for the transfer. *Plaintiff's Complaint at 5.* According to plaintiff, he had been in the unit for over three years without incident prior to the transfer. *Id.*

3

*Plaintiff's Complaint*

On August 26, 2008, plaintiff commenced this action against Williams and Lindsay by delivering his *pro se* complaint to prison authorities at the MDC. *Plaintiff's Complaint at 6*. In his pleading, which is entitled, "Civil Rights Complaint 42 U.S.C. §1983," plaintiff principally alleges that Williams retaliated against him for filing a grievance. Plaintiff states that, prior to July 21, 2008, he had been in Williams' unit (J-71) for three and one-half years "without any problems or filing any grievances." *Id. at 5*. However, "the very first time [plaintiff] filed a grievance[, he] was insulted, mistreated, threatened and intimidated by . . . Williams and [then] moved out of the unit." *Id.* Plaintiff asserts that the filing of grievances is constitutionally protected conduct, and that the "retaliation for the filing of grievances is prohibited by the First and Fourteenth Amendments" of the United States Constitution. *Id.* In addition, plaintiff alleges that Williams' actions constituted obstruction of justice in violation of 18 U.S.C. §1505 because his "threats, insults, intimidation and retaliation . . . corruptly impede[d] the [grievance] proceedings." *Id. at 6*. Plaintiff does not allege that Lindsay was directly involved in any wrongdoing, but claims that he has "supervisory liability" because he was aware of other allegations of retaliation against Williams and failed to take any corrective action. *Id. at 2-3*.

In his complaint, plaintiff admits that he did not file a grievance with respect to Williams' alleged retaliation. *Id. at 1*. He acknowledges that "under the Prison Reform Litigation Act a prisoner must exhaust his administrative remedies before he is allowed to place his prison issues before the courts," and that "[t]he administrative remedy program is the federal inmate grievance procedure enacted under 28 CFR §542." *Id. at 6*. However, plaintiff alleges that "Williams['] threats and intimidation . . . prevented [him] from seeking review at the prison." *Id. at 2*. Specifically, plaintiff states that he became "too afraid to complain to anyone

4

else" after Williams' outburst in front of Woodall resulted in "no consequences." *Id. at 5*. Plaintiff further states that it would have been "[counter]-productive" for him to file a second grievance, since his first grievance against Williams' resulted in retaliation against him. *Id. at 2*.

*The Instant Motion*

Defendants now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Along with their motion, defendants file, *inter alia*, a notice in accordance with Local Civil Rule 56.2, a Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("56.1 Statement"), and the sworn declarations of Nicole McFarland and Louis Williams along with attached exhibits.

Defendants raise three arguments. First, they argue that plaintiff failed to exhaust his administrative remedies at the MDC and thus the Prisoner Litigation Reform Act ("PLRA") mandates that his claims be dismissed. Second, defendants argue that plaintiff's complaint fails to state a cause of action because (1) his §1983 claim against Williams does not allege a constitutional violation and (2) his §1983 claim against Lindsay rests solely on the doctrine of respondeat superior. Finally, defendants argue that each defendant enjoys qualified immunity with respect to this action. *Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment at 3-12*.

Defendants' arguments do not rely solely on facts contained within the four corners of the complaint. In particular, defendants' exhaustion argument relies on facts contained in the affidavit and attached exhibits of Nicole McFarland, as well as portions of their 56.1 Statement. Moreover, their exhaustion argument – specifically, that plaintiff failed to comply with the PLRA's exhaustion requirement – is not jurisdictional, "but is an affirmative defense." *Williams*

proceed under a summary judgment standard, [rather than a motion to dismiss standard,] giving the plaintiff an opportunity to rebut the claim of failure to exhaust in his opposition [using matters outside his complaint]." *Id.*

In light of the foregoing, this Court entered an order, dated October 26, 2010, notifying the parties in accordance with Fed. R. Civ. P. 12(d) that it intended to decide defendants' motion on materials outside the pleadings. The parties were given until November 19, 2010, to submit further evidence that they wished this Court to consider, and were advised that this Court would resolve the motion on the submitted papers alone if no additional evidence was submitted on or before that date. *Id.* To date, neither plaintiff nor defendants have made any additional submissions.

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see, e.g., H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989); *Rodriguez v. Mount Vernon Hosp.*, 2010 WL 3825736, at *7 (S.D.N.Y. 2010). In deciding a summary judgment motion, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Additionally, "[a] *pro se* party's

submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." *Ferguson*, 2010 WL 4227298 at *3.

Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must assert specific facts demonstrating that there is a genuine issue of fact. *Anderson*, 477 U.S. at 250. Importantly, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, to defeat a summary judgment motion there must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49.

## B. Conversion to a *Bivens* Action

Before addressing the merits of defendants' motion, this Court must first address a jurisdictional defect in plaintiff's complaint. His complaint alleges that this action is brought pursuant to 42 U.S.C. §1983. *Complaint at 1*. However, that statute provides a mechanism to obtain relief against defendants who act under color of state, but not federal, law. *See Perez v. Hawk*, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004). Because the individual defendants that plaintiff seeks to sue in this action are federal, not state, employees, plaintiff's complaint does not state a cause of action under 42 U.S.C. §1983. However, since plaintiff is proceeding *pro se*, this Court will construe plaintiff's §1983 claims against these federal employees as claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) – a case which permits plaintiffs to sue federal officers for constitutional violations. *See Tavarez v. Reno*, 54 F.3d 109, 109-10 (2d Cir. 1995) (per curiam) (holding that a district court properly

7

construed a *pro se* §1983 action as a *Bivens* action); *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (construing a *pro se* §1983 claim as a *Bivens* action).

## C. Plaintiff's Failure to Exhaust his Administrative Remedies

Defendants' first argument is that plaintiff's retaliation claim must be dismissed under the PLRA because he did not grieve that claim through the procedures available to federal inmates, and thus failed to exhaust his administrative remedies. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 419 (E.D.N.Y. 2009). The PLRA applies equally to *Bivens* claims. *Porter*, 534 U.S. at 524. To satisfy the exhaustion requirement, a prisoner "must pursue his challenge to the condition in question through to the highest level of administrative review prior to his suit." *Davis v. Reilly*, 324 F. Supp. 2d 361, 365 (E.D.N.Y. 2004) (internal citation omitted). Importantly, the PLRA's exhaustion requirement cannot be satisfied by an "untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). In addition, the PLRA requires "proper exhaustion," which means "using all steps that the agency holds out, and doing so properly." *Id.* at 90.

In his complaint, plaintiff acknowledges that " . . . under the Prison Reform Litigation Act a prisoner must exhaust his administrative remedies before he is allowed to place his prison issues before the courts." *Complaint at 6*. Furthermore, plaintiff expresses considerable

8

familiarity with these administrative remedies, specifically referring to "[t]he federal inmate grievance procedure enacted under 28 CFR §542." *Id.* However, plaintiff admits in his complaint that he did not exhaust those administrative remedies with respect to either defendant, specifically alleging that he was "too afraid to complain" after witnessing Williams' angry outburst. *Id. at 5.*

Plaintiff's sworn submissions filed in opposition to defendants' motion to dismiss offer two new and different excuses for his failure to grieve the alleged retaliation. First, in a sworn document entitled, "Plaintiff, Respond," [sic] plaintiff explains that he "tried to pursue an administrative remedy [. . . but his grievances] were held up until the time allotted for filing expired or the response came back [and] it was too late for [plaintiff] to appeal the decision." *Plaintiff's Response at 3.* Second, in a sworn affidavit, plaintiff avers that after he was relocated to the new unit, his new correctional counselor refused to give plaintiff a grievance form. *Plaintiff's Affidavit at 1.*

In support of his position, plaintiff attaches to his affidavit copies of two previously filed grievances, both dated August 28, 2008. The first grievance is an almost identical copy of his July 21, 2008 grievance. Indeed, there are only two differences: first, the typewritten date "July 21, 2008" was crossed out and the handwritten date "8-28-08" was written in its place. Second, the name of the unit in which plaintiff had resided, J-71, was crossed out and his new unit, G-42, was written in its place. *Plaintiff's Affidavit, Attached Exhibit at 10.* The second grievance, filed the same day, is also identical to the July 21, 2008 grievance except that the changes to the filing date and plaintiff's unit number are typewritten, and a new case number is assigned. *Plaintiff's Affidavit, Attached Exhibit at 16.* The allegations contained in this second grievance are identical to the allegations contained in plaintiff's July 21, 2008, grievance. *Compare*

9

*Plaintiff's Affidavit, Attached Exhibit at 14 to Plaintiff's Complaint, Attached Exhibit at 9.* This second grievance was ultimately rejected on the grounds that plaintiff "did not attempt informal resolution prior to submission of administrative remedy" and that the "request [was] untimely." *Plaintiff's Affidavit, Attached Exhibit at 15.*

"[W]here a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA," a court must engage in a three-part inquiry. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).[3] First, a court should consider "whether the administrative remedies were in fact 'available' to the prisoner." *Id.* at 686. Second, a court should determine whether a defendant's actions inhibited the inmate's exhaustion of remedies, so as to estop the defendant from raising an inmate's failure to exhaust as a defense. *Id.* Finally, a court should consider whether there were "special circumstances" that excused the plaintiff's failure to adhere to the administrative procedural requirements. *Id.*

## 1. Availability of Administrative Remedies

To determine whether administrative remedies were in fact available, the court must consider "whether, from an objective point of view, a similarly situated person of ordinary resilience and intelligence would have deemed the remedies available." *Hemphill*, 380 F.3d at

---

[3] The impact of the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), on the Second Circuit's application of *Hemphill*'s three-part inquiry for exhaustion defenses is uncertain. In *Woodford*, the Supreme Court held that inmates filing suits for violation of their constitutional rights by prison personnel must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91. This holding creates tension with the application of *Hemphill*'s three-part inquiry to exhaustion defenses. However, absent clear authority that *Woodford* overruled *Hemphill*, this Court will follow the lead of other District Courts in the Second Circuit and apply *Hemphill*'s analysis. *See, e.g., Mateo v. O'Connor*, 2010 WL 3199690, at *4 n.6 (S.D.N.Y. 2010); *Winston v. Woodward*, 2008 WL 2263191, at *6 (S.D.N.Y. 2008).

688. The four-tiered administrative grievance procedure available to federal inmates, including plaintiff, is set out in detail at 28 C.F.R. §542.10 *et seq.* (the "Administrative Remedy Program"). First, an inmate with a grievance must attempt to informally resolve the issue of concern by presenting it to a staff member. 28 C.F.R. §542.13(a). The regulations permit a warden to waive the requirement of informal resolution for an "acceptable reason." *Id.* If an inmate's issue of concern is not satisfied by an informal resolution, the inmate must submit a formal, written "Request for Administrative Remedy" (also known as a "BP-9") to the warden within 20 calendar days following the date on which the basis for the grievance occurred. 28 C.F.R. §542.14(a). Alternatively, if an inmate reasonably believes his safety or well-being would be placed in danger by filing a BP-9 at the prison, the inmate may make his grievance directly to the appropriate Regional Director. 28 C.F.R. §542.14(d). Next, if an inmate's BP-9 is denied, the inmate must formally appeal the rejection to the appropriate Regional Director within 20 days of the warden's decision. 28 C.F.R. §542.15(a). Finally, an inmate may appeal a Regional Director's negative decision to the General Counsel of the Bureau of Prisons ("BOP") within 30 days of the Regional Director's response. 28 C.F.R. §542.15(a).

In this case, plaintiff does not contend that the Bureau of Prisons lacked adequate administrative procedures or that he was unaware of them. Instead, plaintiff argues that while administrative remedies may have been nominally available, circumstances at the MDC made those remedies effectively unavailable to him. *See Hemphill*, 380 F.3d at 686-687.

Plaintiff's arguments are unsubstantiated. First, in neither of his two sworn submissions does plaintiff offer any facts to support the allegation in his complaint that he was "too afraid" to avail himself of his administrative remedies. To the contrary, plaintiff states that "[w]hen [he] was move[d] to another unit[]," he asked his counselor at the unit for a grievance form.

11

*Plaintiff's Affidavit at 1*. Plaintiff claims that the new unit counselor refused to give him a form and told him that "plaintiff should [have] gotten one in the other unit[] before he left . . . ." *Id.* Thus, plaintiff implies that he failed to file a grievance with regard to Williams' alleged retaliation because he was denied a form, not because he was afraid. Moreover, this implication is also contradicted by statements in Plaintiff's Response, in which plaintiff indicates that he *did* file grievances, but that these grievances "were held up until the time allotted for filling [*sic*] expired," and resulted in responses that were delivered too late to permit an appeal. *Plaintiff's Response at 3*.

These two new explanations for plaintiff's failure to file a grievance with respect to Williams' alleged retaliation are not only inconsistent with his allegation that he was "too afraid to complain," and with each other, but also are inconsistent with uncontroverted facts and portions of plaintiff's own submissions. First, plaintiff's own papers provide considerable evidence that he was able to obtain forms and file grievances without the cooperation of his unit counselors. For instance, plaintiff specifically states that he "had to get a grievance from another inmate" in order to file his first grievance (on July 21, 2008) "because . . . Williams refuse[d] to give Plaintiff a BP-9." *Plaintiff's Affidavit at 1*. Further, it is undisputed that plaintiff managed to file that BP-9 notwithstanding the lack of cooperation from Williams. *Defendants' 56.1 Statement at ¶4*. In addition, plaintiff did not even need a new BP-9 form in order to file the first of his two grievances on August 28, 2008, because he filed a modified copy of the very same form he had filed on July 21, 2008. *Defendants' 56.1 Statement at ¶4; Plaintiff's Affidavit, Attached Exhibit at 13-14*. Later that same day, plaintiff apparently obtained a new BP-9 form, which he then used to file a second grievance. *Plaintiff's Affidavit, Attached Exhibit at 19-20*. Significantly, even when he was able to obtain the new BP-9, plaintiff did not amend his

12

grievance to allege retaliation, but instead only repeated the same allegations that he had made in the July 21, 2008, grievance.

Second, plaintiff's conclusory allegation that he "wrote grievances . . . which were held up until the time allotted for filling [*sic*] expired," *Plaintiff's Response at 3*, is without any support. While plaintiff's first grievance, dated July 21, 2008, may not have been received by prison authorities until July 28, 2008 (as indicated on the Rejection Notice), it was not rejected as untimely. Rather, according to the July 29, 2008, Rejection Notice, it was rejected because plaintiff had not submitted the BP-9 through authorized channels and had not first attempted an informal resolution of the grievance. *Plaintiff's Affidavit, Attached Exhibit at 9*. Although the Rejection Notice allowed plaintiff five days to resubmit his grievance, plaintiff does not claim that he made any effort to do so or to appeal the decision. In this connection, this Court notes that plaintiff filed his federal district court complaint on August 26, 2008 – approximately one week after the deadline for appealing the rejection of his July 29, 2008, BP-9 – and that authorities at MDC delivered his complaint to this Court within two days.

Finally, there is no evidence offered to support plaintiff's conclusory claim that he received responses to his grievances too late to file an appeal. *Plaintiff's Response at 3*. Plaintiff's first grievance was rejected the day after it was filed, *Plaintiff's Affidavit, Attached Exhibit at 9*, and plaintiff does not provide any evidence that this Rejection Notice was received after the time to appeal had expired. Moreover, even assuming that plaintiff did not receive the Rejection Notice until after the time to appeal had expired, this Court notes that plaintiff filed two grievances regarding Williams' conduct on August 28, 2008 – one month after that conduct allegedly occurred.

*2. Estoppel*

Since plaintiff's papers fail to rebut defendants' evidence that plaintiff had administrative remedies "available" to him, and that he did not exhaust them, this Court turns to the second inquiry: whether the defendants should be estopped from interposing their affirmative defense because their own actions inhibited plaintiff's exhaustion of his administrative remedies. "[T]he standard for, and consequences of, unavailability are potentially different from those of estoppel." *Hemphill*, 380 F.3d at 688. "The test for deciding whether the ordinary grievance procedures were available . . . [is whether] 'a similarly situated individual of ordinary firmness' would have deemed them available." *Id.* In contrast, "[a] plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred" from pursuing available remedies. *Winston v. Woodward*, No. 05-CV-3385, 2008 WL 2263191, at *9 (S.D.N.Y. 2008).

Here, plaintiff alleges that "Williams' threats and intimidation [prevented him] from seeking review at the prison," and that "Williams managed to intimidate [him] and [he] was too afraid to complain to anyone else." *Complaint at 2, 5*. Aside from the fact that these allegations are not repeated in a sworn affidavit pursuant to Fed. R. Civ. P. 56(c), the Court notes that plaintiff was not residing in Williams' unit during the entire time period plaintiff had available to grieve Williams' alleged retaliation. Importantly, plaintiff has offered no evidence that suggest his new unit counselor, or any other prison official, intimidated plaintiff in any way. To the contrary, plaintiff states that he did ask his new counselor for a grievance when he was transferred to the new unit. *Plaintiff's Affidavit at 1*. Moreover, it is uncontroverted that plaintiff filed two new grievances on August 28, 2008. *Plaintiff's Affidavit, Attached Exhibit at 10, 16; Defendants' 56.1 Statement at ¶4(b)*. Accordingly, there is no evidence that defendants'

14

actions deterred plaintiff from pursuing administrative remedies through the Administrative Remedy Program.

### 3. *"Special Circumstances" Justifying Plaintiff's Failure to Exhaust*

Even though plaintiff had administrative remedies available to him, and defendants are not estopped from asserting an exhaustion defense, this Court must still consider whether any "special circumstances" exist to justify plaintiff's failure to comply with the Administrative Remedy Program. *See Hemphill*, 380 F.3d at 690; *see also Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).

> Justification "must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Special circumstances may be found to exist, for example, where prison officials "inhibit an inmate's ability to utilize administrative grievance procedures;" where the prisoner received a favorable disposition from his grievance but the time to appeal had expired and no relief was forthcoming; and where all appeals were undertaken but prison officials did not respond within the required time period. The effect of a plaintiff's justification as to why there was no exhaustion "is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding."

*Hooks v. Howard*, 2010 WL 1235236, *5 (N.D.N.Y. 2010) (citing *Giano*, 380 F.3d at 676-78); *see also Hemphill*, 380 F.3d at 678. In the present case, however, plaintiff has not attributed his failure to grieve retaliation against Williams to ambiguous administrative procedures; reliance on an official, incorrect statement or interpretation of the procedure; or any other "special circumstance." *Cf. Hemphill*, 380 F.3d at 689; *Giano*, 380 F.3d at 676.

Since "the benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir.

2007) (quoting *Woodford*, 548 U.S. at 95), the PLRA's exhaustion requirement must be satisfied by proper compliance with the BOP's administrative remedies – procedures that plaintiff was well aware of and were in fact available to him. Because plaintiff failed to properly exhaust the administrative remedies available to federal inmates under 28 C.F.R. 542.10 *et seq.*, and none of the exceptions set forth in *Hemphill* apply to this case, plaintiff has failed to satisfy the PLRA's exhaustion requirement. Accordingly, plaintiff's suit must be dismissed pursuant to 42 U.S.C. 1997e(a), and defendants' remaining arguments need not be addressed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: December 22, 2010
Brooklyn, New York